UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 03-10361-RWZ |
| | ) | |
| CARLA PAIVA | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant Carla Paiva submits this memorandum to assist the Court at sentencing. Ms. Paiva requests the Court to impose a sentence of two years of probation, no fine and a $100 special assessment.

Given the "nature and circumstances of the offense" and Ms. Paiva's personal "history and characteristics," 18 U.S.C. § 3553(a)(1), such a sentence is "sufficient . . . to comply with the purposes" of sentencing set out in 18 U.S.C. § 3553(a)(2), as required by United States v. Booker ("Booker"), 125 S. Ct. 738 (2005), and complies with the United States Sentencing Guidelines given the government's concession that Ms. Paiva has satisfied the conditions of the "safety valve."

Summary of Relevant Background

The following summary is taken from the Presentence Report revised September 2, 2005 ("PSR"), and from the letters of reference attached hereto.[1]

---

[1] The letters of reference are from Elaine Marshall (foster parent), Rosa Paiva Chasse (sister), Debbie Paiva (sister-in-law), Sidonia Paiva (sister), Jacqueline Medeiros R.N. (former co-worker), David F. Ramos R.N. (former co-worker), Stacey Guertin (friend), Stanley T. Spevack, M.D. (pediatrician).

A.     Ms. Paiva's Background

Carla Paiva is 32 years old. She was born in Portugal, and is the sixth of nine children. She came to the United States with her parents in 1978 when she was five years old. Her family moved to Fall River, where they lived in a housing project. Ms. Paiva's father was an alcoholic, who was verbally and physically abusive to his wife and their children, including Ms. Paiva. Her mother was "old school," refusing to complain about her husband's beatings, and refusing to take the children to the hospital even when they were injured by his beatings.

At the age of seven, Ms. Paiva and her siblings were all removed from their parents and placed in foster care. The children were split up. Ms. Paiva was placed with a family in Westport, Massachusetts. She was separated from her siblings, with almost no familial contact, except with her sister Donna who lived with a foster family on the same street as Ms. Paiva. After several years of almost no contact with her biological family, her parents started coming to see Ms. Paiva, and Ms. Paiva decided she wanted to be with them.

At age 14, Ms. Paiva ran away from her foster home and returned to Fall River. She stopped going to school, and moved from place to place, sometimes staying with her parents, her older siblings or her friends. Ms. Paiva's father continued to abuse her mother, but no longer abused his older children. Ms. Paiva began dating a man four years older than she was and used drugs with him during their relationship.

When Ms. Paiva was 16 years old, she became pregnant and stopped using drugs. In 1990, Ms. Paiva gave birth to her son, Russell. When she went to the hospital because of her pregnancy, the Department of Social Services was notified, and Ms. Paiva was returned to her foster home in Westport. She and her son resided there until Ms. Paiva turned 17.

Since 1990, Ms. Paiva has raised her son, Russell, who is now 15 years old and in the ninth grade. In 1995, Ms. Paiva completed a nurse assistant training course. She passed the certified nurses' aide competency evaluation and became registered as a certified nurse's aide in 1995. Ms. Paiva has worked as a nurse's aide for much of the period since 1995. In 1999, Ms. Paiva married Armindo Paiva, who was ten years her senior and who she describes as like a father figure. They separated in 2001.

B.       Ms. Paiva's Offense Conduct

For approximately five weeks in the summer of 2003, Kevin Briggs, Ms. Paiva's then-boyfriend, distributed drugs for John Melo. Melo never supplied drugs to Ms. Paiva and never hired her to sell drugs for him. Ms. Paiva did not make any drug sales. Ms. Paiva did acquiesce in Mr. Briggs' activities, answered the phone at their shared apartment, passed drug-sale-related phone messages to Mr. Briggs, and drove Mr. Briggs to make some of his deliveries because his license had been suspended. Ms. Paiva did not know the amount of drugs sold by Mr. Briggs, nor did she know the extent of Melo's or Scott Fink's activities. Among the six co-defendants in this case, Ms. Paiva is clearly the least culpable.

C.       Ms. Paiva's Conduct Since Her Arrest

Since her arrest, Ms. Paiva has lived with and cared for her son. She has also served as the principal caretaker for her ailing parents. Her father suffers from the effects of a stroke and is unable to care for himself. Her mother has diabetes and the early stages of Alzheimer's Disease. Over the last two years, Ms. Paiva has worked as a nurse's aide. After a layoff of approximately five months, Ms. Paiva has recently begun working 24-32 hours per week for the Preferred Health Care Agency in Westport, Massachusetts, providing private home and nursing home care. Ms. Paiva also recently married Kevin Briggs.

ARGUMENT

I.    The Court Should Impose A Sentence Of Two Years Of Probation.

    A.    *Booker* Renders The Guidelines Advisory.

The Supreme Court in Booker has rendered the United States Sentencing Guidelines "effectively advisory." Under "advisory" Guidelines, a sentencing court must now consider multiple factors unique to the defendant to

> impose a sentence sufficient, but not greater than necessary, . . .
>
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant; and
>
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a) and (a)(2) (emphasis added).

The Guidelines, however, are not a dead letter. To determine a sentence "sufficient" to achieve the purposes listed in section 3553(a)(2), the district court must consider "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," 18 U.S.C. § 3553(a)(4), together with other factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the kinds of sentences available," 18 U.S.C. § 3553(a)(3), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

4

      B.      A Sentence Of Two Years Of Probation Is Sufficient To Satisfy
The Purposes Of Sentencing.

          1.      Guidelines Sentencing Range

The parties agree that the advisory Guidelines begin at a base offense level 26 under U.S.S.G. § 2D1.1. This offense level is based on holding Ms. Paiva responsible for all of the cocaine Mr. Briggs sold (1,240 grams).[2] Moreover, the parties agree that Ms. Paiva has met the conditions of the "safety valve" under U.S.S.G. § 5C1.2. Therefore, the base offense level is reduced by 2 levels under U.S.S.G. § 2D1.1(b)(6), and by 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1. These agreed-to adjustments result in a base offense level of 21. Ms. Paiva has never been convicted of a crime and, therefore, is in Criminal History Category I.

          2.      Role Adjustment

Ms. Paiva's offense level should also be reduced by four points due to her minimal role, or at least two points for her minor role, in the offense conduct. In a crime involving multiple participants, a sentencing court may decrease a defendant's offense level by two to four levels if the defendant had a mitigating role in the offense. U.S.S.G. § 3B1.2. A four-level reduction is appropriate for a "minimal participant," that is, someone who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, application note 4. A defendant may fit in this category if she is shown to lack "knowledge or understanding of the scope or structure of the enterprise and of the activities of others." Id. See, e.g., United States

---

[2] Although Ms. Paiva did not know the scope of Scott Fink's activities, Probation has also held Ms. Paiva responsible for the approximately 640 grams of cocaine that Melo supplied to Fink because Ms. Paiva knew that Fink was distributing cocaine for Melo. Although Ms. Paiva objects to this additional weight, the use of this additional weight does not alter the base offense level under U.S.S.G. § 2D1.1(c)(7) (base offense level 26 for between 500 grams and 2 kilograms of cocaine).

5

v. Sanderson, 110 F. Supp. 2d 1221, 1223-24 (N.D. Cal. 2000) (four-level adjustment where defendant was least culpable of four in drug operation and served as assistant to another member; defendant's general knowledge of operation did not preclude four-level adjustment; citing United States v. Petti, 973 F.2d 1441,1447 (9th Cir. 1992) (four-level reduction where defendant's participation was minimal when compared to other participants even though he knew scope of conspiracy; ignorance of scope and structure of operation is not prerequisite for minimal participant status)); see also United States v. Munoz, 36 F.3d 1229, 1238 (1st Cir. 1994) (defendant who was a lookout, courier, driver and guard and was accountable for 504 grams of cocaine was minimal participant); United States v. Rivera, 994 F.2d 942, 952 (1st Cir. 1993) (defendant who transported one pound of cocaine interstate with intent to distribute was minimal participant).

    A two-level reduction is available for those who are also less culpable, "but whose role could not be described as minimal." U.S.S.G. § 3B1.2, application note 5. See, e.g., United States v. Tabares, 951 F.2d 405, 410 (1st Cir. 1991) (two-point reduction where defendant less culpable than co-defendant, but drugs were in plain view and cash readily accessible); United States v. Jurado-Lopez, 338 F. Supp. 2d 246, 251-52 (D. Mass. 2005) (when comparing defendant with other participants in offense and other persons convicted of comparable crimes, defendant who served as a drug "mule" was minor participant and received a two-level reduction; defendant did not arrange deal, negotiate price, or know where drugs were going, but did take numerous trips as a "mule"); United States v. Munoz, 36 F.3d at 1238 (defendant who participated in four drug deals and performed surveillance and delivery functions, was minor participant and received two-level adjustment); United States v. Gaytan, 74 F.3d 545, 561 (5th Cir. 1996) (two-point reduction where defendant "acted as a chauffeur" and "lent property to be

6

used for the storing of drugs"); United States v. Hall, 949 F.2d 247, 248-49 (8th Cir. 1991) (two two-level reduction where defendant participated in "financial side of … drug activities" and knew about "the scope and structure of the enterprise" ).  For those defendants falling between "minimal" and "minor," a three-level reduction is available.  U.S.S.G. § 3B1.2.

Here, Ms. Paiva's participation was minimal.  Among the six defendants involved in this case, Ms. Paiva is clearly the least culpable.  In the context of co-defendant Melo's drug operation, Ms. Paiva was the girlfriend of one of Melo's runners, co-defendant Briggs.  She did not devise the scheme, did not organize it, did not stand to profit from it other than because she lived in the same household as Mr. Briggs, and did not recruit either customers or other co-conspirators.  Ms. Paiva was not a runner herself.  She was not recruited by Melo (as were Fink and Briggs).  She did not package, cut or handle any drugs (as did Fink, Briggs and Pinheiro).  Melo did not supply Ms. Paiva with drugs.  And Ms. Paiva did not have customers of her own.  Instead, Ms. Paiva assisted Briggs insomuch as she answered phone calls at their shared apartment and spoke to customers, sometimes accompanied Briggs on drug deliveries in their shared vehicle, gave messages to Melo about Briggs' drug supply, or asked Melo about the reliability of prospective customers.  As a result of Ms. Paiva's peripheral participation, Ms. Paiva should receive a four-point reduction under U.S.S.G. § 3B1.2(a), or at least a two-point reduction under U.S.S.G. § 3B1.2(b).

Notably, Tanya Pinheiro, who was Melo's girlfriend, and who admitted to packaging three kilograms of cocaine for distribution, and knew about Melo's possession and distribution of many additional kilograms, was granted a role reduction by this Court at the government's request.

Assuming Ms. Paiva's offense level is reduced for her minimal role, the advisory guidelines would put her at offense level 17. Because Ms. Humphrey is in Criminal History Category I, she would face a guideline range of 24-30 months.

    3.    <u>Other Grounds For A Probationary Sentence</u>

A two-year probationary sentence is also appropriate because Ms. Paiva is extremely unlikely to re-offend. Ms. Paiva's criminal conduct in this case was an isolated instance of aberrant behavior, <u>compare</u> U.S.S.G. § 5K2.0, occurring over a few weeks in the summer of 2003. Ms. Paiva has never done anything like this before.

Moreover, Ms. Paiva's incarceration would adversely affect her son, who has just started high school and suffers from ADHD, and her parents, who suffer from Alzheimer's and other ailments, and depend on Ms. Paiva for their care. A departure would be appropriate on these grounds under the advisory Guidelines, or under analysis of the factor under 18 U.S.C. § 3553(a), given Ms. Paiva's exceptional present family circumstances. <u>See</u>, <u>e.g.</u>, <u>United States v. Antonakopoulos</u>, 399 F.3d 68 (1st Cir. 2005) (after Booker, defendant free to seek a downward departure based on fact that he is the sole caretaker for brain-damaged son); <u>United States v. Beamon</u>, 373 F. Supp. 2d 878 (E.D. Wis. 2005) (downward departure granted for exceptional family circumstances where defendant made efforts to be a good father to two children and assisted in caring for his sick father); <u>United States v. Ranum</u>, 353 F. Supp. 2d 984 (E.D. Wis. 2005) (downward departure granted for exceptional family circumstances where defendant had no prior record, had a solid employment history, and was devoted to his family; in particular, defendant had two children and provided care for his elderly father who suffered from Alzheimer's disease; defendant's father was particularly dependent on defendant as the defendant is one of the few people he still recognized; court found that defendant's absence

would have a profoundly adverse impact on both his children and his parents); <u>United States v. Bailey</u>, 369 F. Supp. 2d 1090 (Neb. 2005) (downward departure where defendant was "the one person in [daughter's] life that she consistently expresses trust in and clings to," and no other suitable caretakers existed for daughter).

Finally, the Court should consider the extremely difficult upbringing that Ms. Paiva had, and the commendable way she has advanced herself and maintained a stable life environment for many years before and after this offense.  Ms. Paiva should be encouraged to continue this personal progress, and continue to provide support and care to her son and her parents, rather than set back her progress through incarceration.

<u>Conclusion</u>

For these reasons, Ms. Paiva requests the Court to impose a sentence of two years of probation, no fine and a $100 special assessment.

                                           CARLA PAIVA
                                           By her attorney,

                                           / S / Peter B. Krupp

Dated:  November 14, 2005               Peter B. Krupp
                                            B.B.O. #548112
                                           Lurie & Krupp, LLP
                                           One McKinley Square
                                           Boston, MA  02109
                                           Tel:  617-367-1970